# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kenneth Muller and
Martha Teich,

                Plaintiffs,

vs.                               Case No. 11-1815 PJS/JJG

Darwin G. Boutiette, Iqubal Sajady,
Teon J. Summers, Black Bull, Inc.,
James W. Davis, Barry Williams,         **COMPLAINT**
Colleen Williams, Pieter J. Grobbelaar,
Blueleaf Atlantic Enterprises, LLC.,
Chris Rusch, Esq., JDS Group Holdings,    **JURY TRIAL DEMANDED**
LLC., Venture Business Group, Inc.,
Twilla Trent, John Doe, Mary Rowe
and XYZ Corp.,

                Defendants.

Plaintiffs for their cause of action against Defendants state and allege as follows:

## JURSIDICTION

1. The United States District Court has original jurisdiction over Counts I, II and III of this Complaint pursuant to 28 U.S.C. § 1331 and Section 22(a) of the Securities Act, 15 U.S.C. § 77u(a) and Sections 21(e) and 27 of the Securities Exchange Act, 15 U.S.C. §§ 78u(e) and 78aa, as these claims arise under the laws of the United States and raise federal questions.


SCANNED
JUL 7 2011
U.S. DISTRICT COURT MPLS

2. The United States District Court has supplemental jurisdiction over the remaining Counts of this Complaint pursuant to 28 U.S.C. § 1367 as these claims are so related to all the other claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is appropriate in the District of Minnesota because a substantial part of the events, occurrences, false statements and omissions giving rise to Plaintiffs' claims occurred in Minnesota.

## PARTIES

4. Plaintiff Kenneth Muller ("Muller") resides in the State of Minnesota at 9009 Naber Avenue, N.E., Otsego, Minnesota 55330.

5. Plaintiff Martha Teich ("Teich") resides in the State of Minnesota at 939 Burr Street, St. Paul, Minnesota 55101.

6. Defendant Darwin Boutiette ("Boutiette") resides in the State of Minnesota at 17088 Saddlewood Trail, Minnetonka, Minnesota 55435.

7. Defendant Iqubal Sajady ("Sajady") resides in the State of Minnesota at 5905 Goldenrod Lane N., Minneapolis, Minnesota 55442

8. Defendant Teon Summers ("Summers") resides in the State of North Carolina at 3300 Cotton Mill Drive, #206, Raleigh, North Carolina 27612.

9. Defendant James W. Davis ("Davis") resides in the State of Louisiana at 820 Jordan Street

10. Defendant Barry Williams ("Williams") resides in the State of Utah at 2885 Bridalwood Loop, Lehi, Utah 84043.

11. Defendant Colleen Williams ("Colleen") resides in the State of Utah at 2885 Bridalwood Loop, Lehi, Utah 84043.

12. Defendant Pieter J. Grobbelaar ("Grobbelaar") resides in the Country of South Africa at 264 Kent Avenue, Ferndal Ranburg, Johannesburg 2194, South Africa.

13. Upon information and belief, Defendant Chris Rusch, Esq. ("Rusch") resides in the State of California and maintains a law office at 406 Ninth Avenue, Suite 304, San Diego, California 92101.

14. Defendant Blueleaf Atlantic Agency ("Blueleaf") is a Nevada limited liability company with a registered address at 1400 South Linda St., Pahrump, Nevada 89048. Upon information and belief Defendant Blueleaf operates under a number of different names including but not limited to Blueleaf Atlantic Enterprises, LLC. all of which are under the direct control of Defendants Williams and Colleen.

15. Defendant Black Bull, Inc. ("Black Bull") is a North Carolina corporation with a registered address at 4819 Emperor Boulevard, Suite 400, Durham, North Carolina 27703.

16. Defendant JDS Group Holdings, LLC. ("JDS") is a Louisiana limited liability company with a registered address at 820 Jordan Street, Suite 565, Shreveport, Louisiana 71101.

17. Defendant, Twilla Trent ("Trent") resides in the State of North Carolina at 3300 Cotton Mill Drive, #206, Raleigh, North Carolina 27612.

18. Defendants John Doe, Mary Roe and XYZ Corp. are individuals or entities unknown to Plaintiffs, but which may become known to Plaintiffs during the pendency of this matter who may be liable to Plaintiffs for the damages claimed herein.

## FACTS

19. On or about November 23, 2009 Plaintiffs Muller and Teich (by and through her representative, Todd Teich) attended a meeting at the offices of Defendant Sajady.

20. The purpose of the meeting was to allow Defendant Sajady to provide to Plaintiffs Muller and Teich details about a "high yield investment opportunity" utilizing the trading of private securities.

21. Prior to the meeting, Plaintiff Muller was required to sign a Non-Circumvention/Non-Disclosure Agreement, a copy of which is attached hereto as *Exhibit A*.

22. At the meeting Defendant Sajady provided Plaintiffs with written information regarding the investment opportunity, copies of which are attached hereto as *Exhibits B, C, D and E*.

23. During the meeting Defendant Sajady represented to Plaintiffs that both he and his partner Defendant Boutiette were directly connected to a "trade platform" able to generate proceeds of $1,350,000 per week for a 40 week period, all for an initial investment of $300,000.

24. Defendant Sajady further represented to Plaintiffs during said meeting that the returns he had mentioned were possible due to the leveraging of Bank

Guarantees and the high level connections that he and Defendant Boutiette had established overseas.

25. During said meeting Defendant Sajady told Plaintiffs that he and Defendant Boutiette were presently involved in a trade program of their own in order to fund a poultry processing plant and that Defendant Boutiette had successfully participated in similar trade programs in the past.

26. During said meeting Defendant Sajady represented to Plaintiffs that their success in trading was due to the strength and experience in international trading of those with whom they were directly involved.

27. Defendant Sajady provided the Plaintiffs with the names and duties of Defendants Boutiette, Black Bull, Summers and Grobbelaar.

28. Specifically, Defendant Sajady represented to Plaintiffs that Defendant Grobbelaar was the compliance manager for the trade platform and would be instrumental in ensuring that that transaction was properly carried out, accounted for and earnings distributed according to the written agreement.

29. Defendant Sajady provided Plaintiffs with Defendant Grobbelaar's job description, a copy of which is attached hereto as ***Exhibit F***, and suggested a conference call between Grobbelaar and the Plaintiffs.

30. On or about November 24, 2009 Defendant Sajady arranged for and participated on a conference call with Defendant Grobbelaar and Plaintiffs.

31. During said call Defendant Grobbelaar confirmed his relationship with Defendants Boutiette and Sajady and told Plaintiffs that he was the compliance manager for the trade platform.

32. During said call Defendant Grobbelaar represented to Plaintiffs that they would earn $1,350,000 each week for 40 weeks in exchange for an investment of $300,000.

33. During said call Defendant Grobbelaar represented to Plaintiffs that their $300,000 investment would enable the trade platform to acquire a $15,000,000 Bank Guarantee that would be leveraged and used to participate in a 40 week private placement program that would generate the promised returns.

34. During said call Defendant Grobbelaar told Plaintiffs that Defendants Boutiette and Sajady would fly to Switzerland to acquire the Bank Guarantee and set up all necessary accounts.

35. During said call Defendant Grobbelaar represented to Plaintiffs that Defendant Black Bull was the U.S. arm of the trading platform and that the transaction would need to be facilitated through Black Bull due to an "invite only" requirement of the trade platform and Black Bull's preferred status with the trade platform.

36. During said call Defendant Grobbelaar represented to Plaintiffs that he had worked extensively with Black Bull and its principals and that Black Bull had successfully utilized the trade program to fund projects in the States of New York and Iowa.

37. During said call Defendant Grobbelaar represented to Plaintiffs that the trade platform was unique in that it did not require a portion of the proceeds earned to be used for humanitarian purposes.

38. Defendant Sajady was present at all times during said call and heard each of the statements and representations made by Defendant Grobbelaar to Plaintiffs.

39. Defendants Sajady confirmed to Plaintiffs that each of the statements made by Defendants Grobbelaar was true according to their own personal knowledge.

40. Following said call Defendant Sajady sent an e-mail to Plaintiffs containing information provided to him by Defendant Grobbelaar, which was meant to clarify how the Trust worked. A copy of said e-mail is attached hereto as ***Exhibit G.***

41. On or about November 26, 2009 Defendant Sajady arranged and participated on a second telephone conference with Defendant Grobbelaar and Plaintiffs.

42. During said call Defendants Boutiette, Sajady and Grobbelaar again confirmed the returns that Plaintiffs would earn from their investments and further stated to Plaintiffs that there were only 6 spots available for investors, each requiring an investment of $300,000.

43. During said call Defendants Sajady and Grobbelaar represented to Plaintiffs that the 6 spots available to investors were to be filled on a "first-come, first-served" basis and that they were aware of several other investors interested in the opportunity.

44. During said call Defendants Sajady and Grobbelaar urged Plaintiffs to act quickly so as to avoid being left out of the investment opportunity.

45. On or about November 27, 2009 Defendant Sajady forwarded to Plaintiff Muller by facsimile a Joint Venture Agreement for Capital Enrichment Program (the "JV Agreement"), a copy of which is attached hereto as ***Exhibit H.***

46. Defendant Summers and Plaintiff Muller executed the JV Agreement on or about November 27, 2009.

47. On or about December 4, 2009 Defendants Boutiette and Sajady forwarded to Plaintiff Teich by facsimile a Joint Venture Agreement for Capital Enrichment Program (the "JV Agreement"), a copy of which is attached hereto as *Exhibit I*.

48. Defendant Summers and Plaintiff Teich executed the JV Agreement on or about December 4, 2009.

49. Prior to transferring funds in accordance with the JV Agreement, Plaintiffs had subsequent conversations with Defendants Grobbelaar, Boutiette and Sajady.

50. During one such conversation Defendant Grobbelaar told Plaintiffs Muller and Teich that he would personally guaranty the security of their investments and that he would execute a written guaranty in order to provide Plaintiffs with the additional security they desired to transfer the funds to Black Bull, Inc.

51. During one such conversation Defendant Boutiette told Plaintiffs that he was a long-time friend and business associate of Defendant Grobbelaar and that he had been to South Africa to meet with Defendant Grobbelaar on more than one occasion.

52. During said conversation Defendant Boutiette told Plaintiffs that he would be personally flying to South Africa to oversee the transaction.

53. During said conversation Defendant Boutiette told Plaintiffs that he had been involved with Defendant Black Bull and Defendant Summers on other trade programs and that Black Bull was reputable and had an invite to the trade

platform, which was necessary in order to participate in the program.

54. On or about December 4, 2009 Defendant Grobbelaar executed and delivered to Plaintiff Muller a Personal Guarantee, a copy of which is attached as ***Exhibit J.***

55. Defendant Grobbelaar never executed or delivered the Personal Guarantee that he had promised to Plaintiff Teich, but Summers sent Plaintiff Teich an e-mail referencing a repayment guaranty, a copy of which is attached hereto as ***Exhibit K.***

56. In reliance upon the representations made by Defendants Boutiette, Sajady and Grobbelaar, on or about December 4, 2009 Plaintiff Muller executed a wire transfer in the amount of $300,000 to the account of Defendant Black Bull.

57. In reliance upon the representations made by Defendants Boutiette, Sajady and Grobbelaar, on or about December 10, 2009 Plaintiff Teich executed a wire transfer in the amount of $300,000 to the account of Defendant Black Bull.

58. Subsequent to the two wire transfers Defendants Boutiette and Sajady arranged for Plaintiffs to speak directly to Defendant Summers.

59. Plaintiffs communicated with Defendant Summers by e-mail, facsimile, telephone and mail over several months, both in the presence of other defendants and outside of their presence.

60. During a conversation that took place on or about December 11, 2009 between Defendants Boutiette, Sajady and Summers and Plaintiffs, Defendant Summers informed Plaintiffs that their funds had been received and that they should expect to receive their first payment on or before December 17, 2009.

61. On or about December 12, 2010 Defendants Black Bull and Summers wrote Plaintiffs Teich and Muller a letter thanking them for choosing Black Bull for their investment needs and providing Plaintiffs Teich and Muller with the date that each would receive their first return on investment. Copies of said letters are attached hereto as *Exhibits L and M*, respectively.

62. Over the next several months Plaintiffs communicated with Defendants Boutiette, Sajady, Summers, Trent, Black Bull and Grobbelaar about the fact that Plaintiffs had not received funds as promised in the JV Agreements.

63. During said communications Defendants Boutiette, Sajady, Summers, Trent and Grobbelaar provided Plaintiffs with a number of reasons for the delay including but not limited to:

   a.  that payments to Plaintiffs had been slowed by regulatory agencies;

   b.  that the "trade platform" was waiting for the trade manager to sign off on the disbursement documents;

   c.  that the "trade platform" was experiencing difficulties with its backroom operations; and

   d.  that the Plaintiffs had been slotted at the fifth group to receive payments and the "trade platform" was having logistical issues with prior slotted groups.

63. On or about October1 2010 Plaintiffs demanded the return of their funds, but Defendants Boutiette, Sajady, Summers, Trent and Black Bull refused saying that the funds had been lost.

64. During said communications Defendants Summers and Trent made Plaintiffs aware that a portion of their funds had been transferred to Defendants Blueleaf, JDS,

Davis and Rusch, all of whom were participants in the investment opportunity and trade platform.

## COUNT I
### Violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78J(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5
### (Against Boutiette, Sajady, Summers, Trent and Grobbelaar)

65. All previous paragraphs of this Complaint are hereby realleged.

66. From November 2009 until April 2010 Defendants Boutiette, Sajady, Summers, Trent and Grobbelaar and each of them represented to Plaintiffs either verbally, or in writing, or both that:

   a. Defendants were directly connected to a "trade platform" able to generate proceeds of $1,350,000 per week for a 40 week period, all for an initial investment of $300,000;

   b. the returns promised were possible due to the leveraging of Bank Guarantees and the high level connections that Defendants had with the trade platform;

   c. Defendants had successfully participated and or facilitated similar trade programs in the past;

   d. Defendants' success in trading was due to the strength and experience in international trading of those with whom they were directly involved;

   e. Plaintiffs' $300,000 investment would be used by Defendants to acquire a $15,000,000 Bank Guarantee that would be leveraged and used to participate in a 40 week private placement program that would generate the promised returns;

   f. The trade platform had worked extensively with Black Bull and its

      principals and that Black Bull had successfully utilized the trade program to fund projects in the States of New York and Louisiana; and

    g. Black Bull was the U.S. arm of the trading platform and that the transaction would need to be facilitated through Black Bull due to an "invite only" requirement of the trade platform and Black Bull's preferred status with the trade platform;

67. Defendants made the above-referenced statements to Plaintiffs knowing that they were false at the time made, or without knowing whether or not said statements were true at the time made.

68. Defendants made said statements with the intention to induce Plaintiffs to each transfer the sum of $300,000 to Black Bull in reliance on the representations made.

69. Plaintiffs each transferred $300,000 to Black Bull in reliance on Defendant's representations.

70. Plaintiffs have each suffered damages as a result of their reliance on Defendants' representations.

71. Defendants' actions have operated as a fraud or deceit upon Plaintiffs as a purchaser of securities.

72. By reason of the foregoing, Defendants have violated Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

**COUNT II**
**Violation of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a)**

**(Against Boutiette, Sajady, Summers, Trent and Grobbelaar)**

73. All previous paragraphs of this Complaint are hereby realleged.

74. Defendants' actions have violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) and caused Plaintiffs to suffer damages as a result thereof.

### COUNT III
### Violation of Mail and Wire Fraud Statutes, 18 U.S.C. §§ 1341, 1343
**(Against Boutiette, Sajady, Summers, Trent Grobbelaar,
Black Bull, Blue Leaf, Williams, Colleen, Davis and Rusch,)**

75. All previous paragraphs of this Complaint are hereby realleged.

76. Defendants and each of them have made use of the mail or interstate wires as part of a scheme to induce Plaintiffs to send to Defendants the total sum of $600,000 of which each Defendant has or expected to receive a portion thereof.

77. Defendants perpetrated the scheme with the intent to cause harm to Plaintiffs and caused Plaintiffs to suffer damages as a result thereof.

### COUNT IV
### Violation of 18 U.S.C. § 1962 (R.I.C.O.)
**(Against Boutiette, Sajady, Summers, Grobbelaar,
Williams, Colleen, Davis, Trent and Rusch)**

78. All previous paragraphs of this Complaint are hereby realleged.

79. At all times material hereto Defendants operated and managed the enterprise of a "trade platform" in order to induce Plaintiffs and others to transfer money to the enterprise and its individual participants.

80. Defendants have used the guise of a "trade platform" to induce others to transfer money to the enterprise and its individual participants over a substantial period of time.

81. Plaintiffs relied upon Defendants' representations to their detriment, thereby

suffering damages in the total amount of $600,000.00.

82. Defendants acts in the unlawful sale of securities and unlawful use of the mail and interstate wires to further the enterprise of a "trade platform" is a violation of 18 U.S.C. §1962(c).

## COUNT V
### Fraud
### (Against Boutiette, Sajady, Summers, Trent Grobbelaar and Davis)

83. All previous paragraphs of this Complaint are hereby realleged.

84. Defendants and each of them represented to Plaintiffs at various times from November 2007 to the present that the "trade platform" was a safe, legitimate, investment with which each of the Defendants possessed significant experience and had realized success in the past.

85. These representations were false in that none of the Defendants had any successful experience with the "trade platform", the "trade platform" did not in fact exist and the investment was not legitimate.

86. Defendants knew or should have known at the time that they made such representations that the representations were false.

87. Defendants made the representations with the intention of inducing Plaintiffs to invest their money.

88. Plaintiffs relied upon Defendants' representations in deciding to transfer funds to the Defendants and thereby suffered damages in the principal amount of $600,000.00.

## COUNT VI
### Breach of Contract
### (Against Grobbelaar)

89. All previous paragraphs of this Complaint are hereby realleged .

90. The Guaranties of Grobbelaar to Plaintiffs are valid and enforceable contracts.

91. Black Bull has defaulted under the terms of the JV Agreements by reason of its failure to make payments as required by said Agreements and as a result, Grobbelaar is liable to Plaintiffs to make payment pursuant to his Guaranties.

## COUNT VII
### Breach of Contract
### (Against Black Bull)

92. All previous paragraphs of this Complaint are hereby realleged.

93. On or about December 4, 2007 for the consideration therein expressed Plaintiffs entered into separate written agreements with Black Bull, copies of which are attached hereto as *Exhibits H and I*, respectively.

94. Plaintiffs performed their obligations under the contract by tendering to Black Bull the total sum of $600,000.00

95. Black Bull has not performed the agreement on its part in that no returns have paid to Plaintiffs and no instruments have been secured.

96. Plaintiffs have repeatedly demanded the return of their money but Black Bull has refused and still refuses to do so.

97. Plaintiffs have thereby been damaged in the amount of $600,000.00

## COUNT VIII
### Unjust Enrichment
### (Against Boutiette, Sajady, Summers, Grobbelaar, Black Bull, Blue Leaf, Williams, Colleen, Davis, Trent and Rusch)

98. All previous paragraphs of this Complaint are hereby realleged.

99. Defendants and each of them have upon information and belief received monies directly, or indirectly from Plaintiffs under circumstances such that it would be unjust and unfair for said Defendants to retain the monies received.

### COUNT IX
### Piercing the Corporate Veil
### (Against Black Bull and Blue Leaf)

100. All previous paragraphs of this Complaint are hereby realleged.

101. Defendants Black Bull and Blue Leaf operated as the alter egos of Defendants Summers on the one hand and Williams and Colleen on the other.

102. Upon information and belief, no corporate formalities were followed with respect to Black Bull and Blue Leaf and both were either insolvent or undercapitalized for the purpose of carrying forward the transactions with Plaintiffs.

103. As a result, it would be fundamentally unfair to allow Defendants to be allowed to claim the protections otherwise afforded business entities.

**WHEREFORE,** Plaintiffs request relief as follows:

1. Under Counts I and II of the Complaint, for judgment in favor of each Plaintiff against **Boutiette, Sajady, Summers, Trent and Grobbelaar** jointly and severally in the amount of $300,000.00 together with interest, costs and disbursements and reasonable attorneys' fees.

2. Under Count III of the Complaint, for judgment in favor of each Plaintiff against **Boutiette, Sajady, Summers, Grobbelaar, Black Bull, Blue Leaf,**

**Williams, Colleen, Davis, Trent and Rusch** jointly and severally in the amount of $300,000.00 together with interest, costs and disbursements and reasonable attorneys' fees.

3.   Under Count IV of the Complaint, for judgment in favor of each Plaintiff against **Boutiette, Sajady, Summers, Grobbelaar, Black Bull, Blue Leaf, Williams, Colleen, Davis, Trent and Rusch** jointly and severally in the amount of $900,000.00 as allowed by statute together with interest, costs and disbursements and reasonable attorneys' fees.

4.   Under Count V of the Complaint, for judgment in favor of each Plaintiff against **Boutiette, Sajady, Summers, Trent, Grobbelaar and Davis** jointly and severally in the amount of $300,000.00 together with interest, costs and disbursements and reasonable attorneys' fees.

5.   Under Count VI of the Complaint, for judgment in favor of each Plaintiff against **Grobbelaar** in the amount of $300,000.00 together with interest, costs and disbursements and reasonable attorneys' fees.

6.   Under Count VII of the Complaint, for judgment in favor of each Plaintiff against **Black Bull** in the amount of $300,000.00 together with interest, costs and disbursements and reasonable attorneys' fees.

7.   Under Count VIII of the Complaint, for judgment in favor of each Plaintiff against **Boutiette, Sajady, Summers, Grobbelaar, Black Bull, Blue Leaf, Williams, Colleen, Davis, Trent and Rusch** jointly and severally in the amount of $300,000.00 together with interest, costs and disbursements and reasonable attorneys' fees.

8. Under Count IX of the Complaint, for judgment in favor of each Plaintiff allowing Plaintiffs to pierce the corporate veils of **Black Bull and Blue Leaf** and hold their respective shareholders liable for the judgments entered against said corporations.

9. For such other and further relief as the Court may deem just and equitable.

BOYNTON LAW OFFICES, P.A.

Dated: 6/17/11

By: *[signature]*
Steven E. Boynton (#218492)
13700 Reimer Drive, Suite 230
Maple Grove, MN 55311
(763) 232-2727

Attorneys for Plaintiff.

## ACKNOWLEDGEMENT

The undersigned hereby acknowledges that costs, disbursements, witness fees and reasonable attorneys' fees may be awarded pursuant to Minnesota Statute Section 549.21, subd. 2, to the party against whom the allegations in this pleading are asserted.

Dated: 6/17/11

*[signature]*
Steven E. Boynton